Anna J. COKAS et al., Plaintiffs,

v.

Dr. W. Robert PERKINS, Jr., Defendant
and Third-party Plaintiff,

v.

Dr. Aaron GERBER and Doctors' Hospital, a corporation, Third-party
Defendants.

Civ. A. No. 2245-64.

United States District Court
District of Columbia.

March 28, 1966.

Joseph S. McCarthy, Washington, D. C., for plaintiffs.

Arthur V. Butler, Butler & Gorman, Washington, D. C., for defendant and third-party plaintiff.

J. Joseph Barse, Welch, Daily & Welch, Washington, D. C., for third-party defendant Gerber.

John J. Laskey, Jackson, Gray & Laskey, Washington, D. C., for third-party defendant Doctors' Hospital.

SIRICA, District Judge.

This matter comes before the Court upon the motion of the third-party defendants, Dr. Gerber and Doctors' Hospital, to dismiss the third-party complaint of the defendant, Dr. Perkins. The plaintiffs, Mr. and Mrs. Cokas, have brought this action to recover for injuries and damages they claim to have suffered as a result of negligence on the part of the defendant. From the files and records and from the statements of counsel, it appears that on September 29, 1961, the female plaintiff, thinking herself to be pregnant, visited the office of the defendant, Dr. Perkins. Upon examination, he found what he thought was a tumor. He then caused the plaintiff to be admitted to Doctors' Hospital in Washington, D. C., calling in Dr. Aaron Gerber, a specialist in the field of surgery.

On October 2, 1961, in Doctors' Hospital, Dr. Gerber performed upon the plaintiff an operation known as an hysterectomy. Thereafter, Dr. Gerber attended Mrs. Cokas until the tenth post operative day. Dr. Perkins then treated the plaintiff until she was discharged from the hospital on October 22, 1961, and continued to do so for some time thereafter. Plaintiffs allege that subsequent to the operation, Mrs. Cokas complained to Dr. Perkins of intense pain in her abdomen. On April 9, 1962, x-rays were taken by Dr. Gerber which revealed the apparent source of this pain. During the operation, a surgical instrument known as a hemostat was placed inside the female plaintiff, and apparently this instrument was not removed after the operation.

Two malpractice suits were filed, one against Dr. Perkins and the other against Dr. Gerber and Doctors' Hospital. These actions have now been consolidated for purpose of trial. The claim against Dr. Perkins is based on an allegation that he was negligent in failing to discover the existence of the hemostat. The complaint against Dr. Gerber and Doctors' Hospital alleges negligence in allowing the instrument to be left within the female plaintiff after the operation. In his answer, Dr. Perkins denies any negligence on his part, and disclaims responsibility for any injuries and damages which the plaintiffs may have suffered. In a third-party complaint, he seeks contribution or indemnification from Dr. Gerber and Doctors' Hospital in the event that he is held liable to the plaintiffs. It is upon the motion of Dr. Gerber and Doctors' Hospital to dismiss this third-party complaint that the Court must now pass.

Since Merryweather v. Nixan, 8 Term Rep. 186, 101 Eng.Rep. 1337 (K.B.1799), claims for contribution or indemnity among tortfeasors have been the subject of considerable debate. In *Merryweather,* the Court denied contribution among joint but willful wrongdoers. Subsequent courts expanded the rule to cover merely negligent joint tortfeasors. Thus, in Curtis v. Welker, 54 App.D.C. 272, 296 F. 1019 (1924), our Court of Appeals in-

terpreted Union Stockyards Co. of Omaha v. Chicago, B. & Q. R. R., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905) as demanding a denial of contribution among joint wrongdoers, although the Supreme Court of the District of Columbia had previously indicated in dictum that the denial of contribution should be limited to cases of moral turpitude, see Herr v. Barber, 2 Mackey 545, 556, 13 D.C. 545 (1883). Subsequently, in George's Radio, Inc. v. Capital Transit Co., 75 U.S.App. D.C. 187, 126 F.2d 219 (1942), the Court of Appeals changed its mind. In this case a plaintiff had recovered a judgment against George's and Capital Transit as joint tortfeasors, on the ground of *respondeat superior*. The plaintiff looked to George's for satisfaction and did not seek anything from Capital Transit. In a separate action, the Court of Appeals held that contribution should be allowed between the joint tortfeasors. A few years later, in Knell v. Feltman, 85 U.S. App.D.C. 22, 174 F.2d 662 (1949), contribution was allowed between the actual participants in the joint tort, where they were not intentional wrongdoers.

■ The philosophy behind the allowance of contribution between tortfeasors is that the discharge of an obligation by one of the obligors without proportionate payment from the other gives the latter an advantage to which he is not equitably entitled. George's Radio, Inc. v. Capital Transit Co., supra, 75 U.S. App.D.C. at 189, 126 F.2d at 221. It appears well settled that for contribution to be available, two or more defendants must have acted in concert, or independently, in causing a single injury. Their acts must have mutually contributed to the injury in an indivisible manner. See D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 267, 266 F.2d 465, 468, 72 A.L.R.2d 1290, cert. denied, 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed. 2d 64 (1959); Bost v. Metcalfe, 219 N.C. 607, 14 S.E.2d 648 (1941). The fact that the acts of the defendants are not simultaneous but successive does not mean that the contribution is improper, where the acts concur in causing the injury. See

Nordstrom v. District of Columbia, 213 F. Supp. 315 (D.D.C.1963), rev'd on other grounds, 117 U.S.App.D.C. 165, 327 F.2d 863 (1963). For example, in D. C. Transit System, Inc. v. Slingland, supra, a bus driver left his vehicle with its rear end angled out toward the center of the street. While the driver was gone, the bus was struck by a U. S. mail truck. Although the two negligent acts, leaving the bus in the manner described, and striking the bus with the mail truck, were independent and consecutive in chronology, they concurred in causing the injury to the plaintiff, a passenger on the bus. Accordingly, contribution was directed.

■ It has been generally held that "a person, physically injured by the negligence of another, may recover in one action against a tortfeasor, not only for any injuries caused by the tortfeasor's negligence, but for any aggravation of them due to the incompetence of the physicians who treated him." Balancio v. United States, 267 F.2d 135, 137 (2d Cir.), cert. denied, 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959); accord, Jess Edwards, Inc. v. Goergen, 256 F.2d 542, 100 A.L.R.2d 804 (10th Cir. 1958); Rogers v. Hexol, Inc., 218 F.Supp. 453, 455 (D.Ore.1962) (dictum); Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575 (1951); Prosser, Torts, 318 (3rd ed. 1964); Restatement (Second), Torts § 457 comment *d* (1965). The rationale behind this rule is an assumption that medical negligence aggravating the original injury is foreseeably within the scope of the risk created by the original tortious conduct. The instant case is factually unusual in that both the original and subsequent alleged tortfeasors are medical practitioners. However, of itself, this would not seem to be a sufficient distinction to prevent the operation of this rule, see Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327 (1948), and while its applicability has apparently not been the subject of discussion by our Court of Appeals, for the purposes of this motion, the Court will assume that this is the law in the District of Columbia.

■ It would appear to be beyond dispute that Dr. Perkins would be liable for any injuries sustained by the plaintiffs as a result of his own negligence. Accord, Fauver v. Bell, supra. Under the cases cited, then, both Dr. Gerber and Doctors' Hospital, as well as Dr. Perkins, might be held liable to the plaintiffs for injuries and damages suffered at the hands of Dr. Perkins. Assuming this to be the law, it would be a logical step to hold that these three alleged tortfeasors are joint tortfeasors and that contribution would be appropriate. Indeed, our Court of Appeals has indicated that under the law of Virginia, "[t]o the extent that the original tort-feasor is accountable for the damage caused by medical negligence in the treatment of injuries caused by him, he stands in the relationship of a joint tort-feasor to the offending physician." Fletcher v. Hand, 358 F.2d 549 (D.C.Cir. Jan. 13, 1966). This Court, however, does not believe that the participation of Dr. Gerber and Doctors' Hospital, as alleged in this case, is sufficiently proximate to, or causally related with the injuries, if any, inflicted by Dr. Perkins to allow the Court to require the former to respond to the latter. As between the plaintiff and the original tortfeasor, there might be sufficient policy reasons for extending liability to include a doctor's aggravation of the original injury, but no such reason has been advanced for allowing this tortfeasor to pass on part of the responsibility for injuries which in the least analysis were the result of his own fault. Accordingly, the Court is of the opinion that contribution should not be allowed. See Bost v. Metcalfe, supra. However, while the Court feels that contribution does not lie here, it is aware that this ruling involves at least one controlling question of law as to which there is substantial ground for difference of opinion, and, accordingly, to eliminate any question as to the appealability of its order, the Court will certify this ruling for an appeal under 28 U.S.C. § 1292(b).

■ As an alternative to his claim for contribution, Dr. Perkins has asserted that he is entitled to indemnification from Dr. Gerber and Doctors' Hospital for any amounts which he may be compelled to pay to the plaintiffs. Dr. Perkins' position is that if he was negligent at all, his negligence was only passive or secondary as compared with the primary or active negligence of the other defendants. He also maintains that he had the right to rely upon the skill and care of the other defendants in performing the operation properly. As a basis for this latter claim, Dr. Perkins cites Sweeney v. Erving, 35 App.D.C. 57, 43 L.R.A., N.S., 734 (1913). In *Sweeney,* a surgeon sent a female patient to a radiologist to have some x-rays taken. Unknown to either of the doctors, the woman was sensitive to x-rays and when the radiologist subjected her to them, she was badly burned. In her suit against the radiologist, the woman claimed that he was negligent in failing to test her for sensitivity. In holding that the radiologist was not negligent, the Court said: "Having been under treatment by a surgeon of recognized ability and having been sent to the defendant by such surgeon, for the purposes named, we think the defendant, in the absence of anything warranting a contrary conclusion, was justified in relying upon the judgment of the surgeon." Id. at 64. Assuming, without deciding, that *Sweeney* presents a basis for Dr. Perkins' claim that he had a right to rely on the skill of the other defendants in performing the operation, this would only go to show that he was not negligent in so relying. While this case might form the basis for a motion to dismiss the complaint against Dr. Perkins, or for summary judgment, it would not necessitate a holding that Dr. Perkins is entitled to be indemnified by the other defendants.

■ A right to indemnity arises either from an express contractual provision or from an obligation created by operation of law. See Thomas v. Malco Refineries, Inc., 214 F.2d 884 (10th Cir. 1954). When the obligation is imposed by law, it is based on the law's notion of what is fair and proper between the

parties. George's Radio, Inc. v. Capital Transit Co., supra. It appears to be well settled that if the wrongful act of one person results in the imposition of liability upon another without that other's fault, indemnity may be recovered from the actual wrongdoer. See Detroit Edison Co. v. Price Bros., Inc., 249 F.2d 3 (6th Cir. 1957); St. Louis-San Francisco Ry. v. United States, 187 F.2d 925 (5th Cir. 1951). In other words, a person who has discharged a duty which is owed by him, but which, as between himself and another, should be discharged by the other, is entitled to indemnity. Allied Mut. Cas. Corp. v. General Motors Corp., 279 F.2d 455 (10th Cir. 1960). Sometimes this rule is phrased in terms of active or primary and passive or secondary negligence. See Nordstrom v. District of Columbia, supra.

It would be impossible to set forth a complete list of the factual circumstances in which indemnity would be proper but certain situations have appeared with sufficient frequency to be called typical. One of the most common indemnity situations is involved in the application of the *respondeat superior* doctrine. The master who has become subject to liability has a right over against the servant tortfeasor. See Thomas v. Malco Refineries, supra. Another common situation is where one person has a nondelegable duty and is held accountable to a plaintiff injured due to a breach thereof, which breach is caused by the act of a third party. Thus, in States S. S. Co. v. Rothschild International Stevedoring Co., 205 F.2d 253 (9th Cir. 1953) a ship owner who had been guilty of a breach of his absolute duty to provide a safe place for longshoremen was granted indemnity against the third party who actually caused this breach. Accord, Allen v. States Marine Corp., 132 F.Supp. 146 (S.D.N.Y.1955). Similarly in Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896), where the District of Columbia was held liable for damages occasioned by its failure to maintain a street in the proper condition, the District recovered indemnity from the party responsible for the defect. Another interesting situation in this District appears in Coates v. Potomac Elec. Power Co., 96 F.Supp. 1019 (D.D.C.1951). In this case, the plaintiff recovered from PEPCO when he was struck by a PEPCO electric power wire which was knocked down by a crane belonging to the Gas Company. The basis of recovery was negligence in not maintaining the line so that it would not injure people if it were disturbed. PEPCO was then awarded indemnity from the Gas Company. The Court found that PEPCO was a secondary and passive tortfeasor and that the negligence of the Gas Company was the ultimate cause of the accident.

In deciding whether indemnity should be awarded, it is essential to determine which party is the real cause of the injury. See Union Stockyards Co. of Omaha v. Chicago B. & Q. R. R., supra, 196 U.S. at 227, 25 S.Ct. 226. The parties must not be *in pari delicto*, in the sense that they must not be equally at fault, see Gomes v. Eastern Gas & Fuel Associates, 127 F.Supp. 435 (D.Mass.1954); Spaulding v. Parry Navigation Co., 90 F. Supp. 564, 566 (S.D.N.Y.1950), rev'd on other grounds, 187 F.2d 257 (2d Cir. 1951), cert. denied, Parry Nav. Co. v. Todd Shipyards Corp., 342 U.S. 918, 72 S.Ct. 362, 96 L.Ed. 686 (1952), since basic to the indemnification rule is a difference in the gravity of fault of the parties involved, see Spaulding v. Parry Navigation Co., supra, 187 F.2d 257. Thus, in Warner v. Capital Transit Co., 162 F.Supp. 253 (D.D.C.1958), the Court denied indemnity to the transit company where the operator of its bus and the driver of a taxicab were both negligent in causing injury to the plaintiff. In the instant case, the Court can see no justification for allowing Dr. Perkins to pass along his liability to the other defendants. Certainly any judgment against him will be based on his own negligence, if in fact he was negligent, and not upon legal intendment or inference. Even assuming that these defendants are joint tortfeasors, there

would not be such a disparity between the degrees of fault involved so as to warrant indemnification.

For the foregoing reasons, the motions of the third-party defendants will be granted. Counsel will present an appropriate order.